[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21–11892

_____

VICTOR ELIAS PHOTOGRAPHY, LLC,

Plaintiff-Appellant,

*versus*

ICE PORTAL, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-62173-RS

_____

Before NEWSOM and MARCUS, Circuit Judges, and COVINGTON,* District Judge.

COVINGTON, District Judge:

In 2016, commercial photographer Victor Elias discovered infringing uses of his copyrighted images on the internet. Instead of pursuing the infringing parties, Mr. Elias brought a lawsuit against Ice Portal, Inc. – now a division of Shiji (US), Inc. ("Shiji") – which acts as an intermediary between the hotels that licensed Mr. Elias's photographs and online travel agents ("OTAs") like Expedia and Travelocity.[1] In optimizing the photographs for use by the OTAs, Shiji's software allegedly removed certain copyright-related information that Mr. Elias had embedded within the metadata of the photographs. Mr. Elias, through his company Victor Elias Photography, LLC ("Elias LLC"), claimed that Shiji therefore violated the Digital Millennium Copyright Act ("DMCA").

The district court correctly granted summary judgment to Shiji because Elias LLC did not show an essential element of its claim – namely, that Shiji knew, or had reasonable grounds to

---

* Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

[1] During the relevant time periods, ICE Portal, Inc. was the company acting as the intermediary between the hotels and OTAs. Shiji (US), Inc. acquired Ice Portal in February 2019, at which time ICE Portal merged into Shiji and became a division of the larger company. This opinion will refer to the companies collectively as Shiji.

21–11892        Opinion of the Court        3

know, that its actions would induce, enable, facilitate, or conceal a copyright infringement. Accordingly, we affirm.

## I

### A.  Mr. Elias's photographs and their CMI

Mr. Elias is a professional photographer who specializes in taking photographs of hotels and resorts throughout the United States, Mexico, and the Caribbean. He is the sole owner and operator of Elias LLC. Mr. Elias registers his photographs with the Copyright Office, and Elias LLC holds those copyrights by written assignment.

Between 2013 and 2017, Mr. Elias took photographs for hotels owned by Starwood Hotels & Resorts Worldwide, Inc. ("Starwood")[2] and Wyndham Hotels & Resorts ("Wyndham") (collectively, the "Hotels"). Mr. Elias claims that the following information was inserted into the metadata within the image files that he sent to the Hotel properties:

| | |
|---|---|
| Creator | Victor Elias |
| Creator's Job Title | Owner/Photographer |
| Copyright Notice | @Victor Elias |
| Creator's Contact Info | USA, 5301 N. Commerce Ave. Suite 4, 805-265-5421 |
| Rights Usage Terms | Rights Managed |

---

[2] Starwood merged with Marriott International, Inc. in September 2016. *See* Starwood Acquisition & Historical Information, *available at* https://marriott.gcs-web.com/starwood.

This information was embedded in IPTC format[3] in all the images at issue.

This information is commonly referred to as copyright management information ("CMI").[4] Because CMI is embedded within the image file, an individual must make several "clicks" on the file to access this information. Specifically, the person viewing the file would have to right-click on the image file and then open the "properties" or "more info" field to access the information.

After Mr. Elias took the photographs at issue, Elias LLC would extend broad licenses to the Hotels, allowing them to use the photographs to promote their properties in unlimited quantities, for an unlimited time, and in any format – without a restriction on how the photographs' CMI could be manipulated or removed.[5] The Hotels were licensed to use the photographs at

[3] IPTC format is named for the International Press Telecommunications Council, which developed metadata standards to facilitate the exchange of news, and typically includes the title of the image, a caption or description, keywords, information about the photographer, and copyright restrictions. See Stevens v. Corelogic, Inc., 899 F.3d 648, 671 (9th Cir. 2018).

[4] CMI metadata is specifically copyright identifying information manually added to the image by the photographer or editor. Shiji also refers to this information as "extended attributes." At least in the context of this case, "extended attributes" and "CMI" are interchangeable terms.

[5] Elias LLC claims that it reserved this right by including a disclaimer in the agreements with the Hotels that it reserved "[a]ll rights not specifically granted in writing, including copyright" as the "exclusive property of [Elias LLC]." But Elias LLC does not explain how this language prevents the Hotels (or their

issue to market their properties on their own websites and on third-party travel booking websites or OTAs. The parties do not dispute that, as they were displayed on the Hotels' own websites, the at-issue photographs included Elias LLC's CMI embedded within the metadata.

## B.  Shiji's role

Shiji acts as an intermediary between hotel chains, like Starwood and Wyndham, and OTAs by receiving copies of photographs from the hotels and making them available to OTAs. From 2013 to 2018, Shiji housed approximately 1.5 million different hotel images in its system. During the relevant time periods, Starwood and Wyndham contracted with Shiji to make images for thousands of their properties available to OTAs. Of the more than 9,400 images that Shiji processed for the Hotels, 220 were taken by Elias.

Between 2013 and 2018, Shiji processed photos collected from the Hotels in the following manner. First, Shiji's software

---

agents) from removing CMI. Moreover, Elias LLC's argument that it reserved this right by requiring proper attribution of the photographs also does not establish that Elias LLC desired to preserve its CMI. Finally, while Elias LLC cites the license for the Marriott Casa Magna Resort, which provided that "[a]ll metadata information included within the images shall remain intact," Shiji argues that Elias LLC slyly inserted that term into a new version of the licenses sent to Marriott upon request, without revealing that the term did not appear in the original licensing agreement. Elias LLC does not respond to this argument in its reply brief. And, in any event, Shiji never received files from Marriott or made images of Marriott hotel properties available to OTAs.

would download copies of image files from the Hotels' respective servers and store them on Shiji's server. Each image file provided to Shiji came with a separate spreadsheet file containing pertinent information about the image that would be displayed on the OTA websites, such as room type or a caption. After receiving the image files, Shiji's software would then convert the files into JPEG format, making copies of the photos in various industry-standard sizes. The conversion to JPEG format optimized the image files for faster display on OTA websites, but it came at a cost – sometimes the metadata on the image file, such as the CMI, would be erased. Finally, the JPEG copies of the photographs would be saved on Shiji's server, along with the accompanying spreadsheet file, and made available to OTAs.

## C. Mr. Elias discovers photographs missing his CMI

Protecting his copyrights is important to Mr. Elias. He claims that he embedded the CMI within his photographs because the CMI's text is fully searchable, allowing him to patrol the internet and find instances of copyright violations. As the district court succinctly summarized, Elias employs six methods by which he searches for his images and ensures that his copyright is not being violated:

> (1) Elias visits OTA websites, types in the names of locations where he has shot photos of a hotel, then looks for the hotels he shot, and then looks for the images; (2) Elias Googles the hotel name plus "Victor Elias"; (3) Elias uses ImageRights software, which

searches for visual image matches on the internet; (4) Elias uses TinEye which searches for copies of images he uploads; and (5) Elias uses Google images to search for copies of the photos. According to Elias, he also uses Google to search using keywords such as "Victor Elias" and "Victor Elias Photography," which can result in the return of pages containing keywords in the embedded metadata.

In September 2016, using the methods described above, Mr. Elias discovered unauthorized copies of his photographs posted on non-party, non-OTA websites without his CMI. Although some of these photographs included visible credits, the photographs credited someone other than Mr. Elias. He admits that he has no actual knowledge of where these non-party websites obtained the images. Mr. Elias then discovered that on OTA websites, his CMI was stripped out of the images at issue.

### D. Procedural History

Based on the foregoing facts, Elias LLC filed suit against Shiji in August 2019. In its amended complaint, it alleged in a single count that Shiji violated two sections of the DMCA – 17 U.S.C. §§ 1202(a) and 1202(b) – through its stripping of the CMI in Elias LLC's copyrighted photos.[6]

---

[6] On appeal, Elias LLC does not present any arguments pertaining to its Section 1202(a) claim. It has therefore waived any such argument, and we will

Following discovery, Shiji moved for summary judgment, and Elias LLC sought partial summary judgment. The district court ruled in favor of Shiji, finding that Elias LLC could not satisfy the "second scienter requirement" of the statute, a concept we will explain further below. Relying on the Ninth Circuit Court of Appeals' decision in *Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018), the district court held that Elias LLC could not satisfy the second scienter requirement because it had not established that Shiji "knew or had reason to know that its actions would induce, enable, facilitate, or conceal infringement" and had failed to present any evidence "demonstrating that [Shiji] was aware or had reasonable grounds to be aware of the probable future impact of its actions."

The district court reasoned that Elias LLC had failed to make its showing for two reasons. First, it had not shown that Shiji's removal of CMI "is the reason, or even the likely reason, for the infringing use of the images [Mr. Elias] has found on the internet." Second, Elias LLC had not shown that Shiji was even aware that searching for terms embedded in the extended attributes was a method used by copyright holders to find infringement on the internet. The district court also dismissed Elias LLC's argument that a prior arbitration gave Shiji the requisite awareness because (1) it had failed to show that "mere familiarity" with the DMCA

---

focus on the Section 1202(b) claim. *See Lind v. United Parcel Serv., Inc.,* 254 F.3d 1281, 1283 n.2 (11th Cir. 2001).

gave Shiji reason to know that removal of CMI from the photos it copied would induce, enable, facilitate, or conceal infringement; and (2) the arbitration panel ruled in Shiji's favor, finding that the other party "had not shown that [Shiji's] removal of CMI would result in infringement."

Because the district court concluded that Elias LLC could not, as a matter of law, show that Shiji knew, or had reasonable grounds to know, that its actions would "induce, enable, facilitate, or conceal infringement," the court entered summary judgment in favor of Shiji. This appeal followed.

## II

We review a district court's grant of summary judgment *de novo*, employing the "same legal standards that bound the district court." *Bonanni Ship Supply, Inc. v. United States*, 959 F.2d 1558, 1561 (11th Cir. 1992).

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it has the potential to affect the outcome of the case, and a dispute is "genuine" only if a reasonable jury could return a verdict for the non-moving party. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018). When the non-moving party has failed to prove an essential element of its case, summary judgment is appropriate. *Am. Fed'n of Labor & Congress of Indus.*

*Orgs. v. City of Miami*, 637 F.3d 1178, 1186–87 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III

#### A.    The DMCA and Section 1202(b)'s second scienter requirement

Congress enacted the DMCA in 1998 "to strengthen copyright protection in the digital age." *Mango v. BuzzFeed, Inc.,* 970 F.3d 167, 170–71 (2d Cir. 2020). The DMCA provision pertinent to this case provides as follows:

> **(b) Removal or alteration of copyright management information.** – No person shall, without the authority of the copyright owner or the law –
>> (1)    intentionally remove or alter any copyright management information, [or]
>> . . .
>> (3)    distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).[7]

Interpretation of Section 1202(b) is an issue of first impression in this Circuit. We start, as always, with the language of the statute. *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc) ("We begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they should often end it as well, which is with the words of the statutory provision."). If the statute's language is plain, then the sole function of the court is to enforce the statute according to its terms. *Gonzalez v. McNary*, 980 F.2d 1418, 1420 (11th Cir. 1993). A statute should be construed to give effect to all its provisions, "so that no part of it will be inoperative or superfluous, void or insignificant." *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1287 (11th Cir. 2005).

By its plain terms, the statute requires proof that the defendant knew, or had reasonable grounds to know, that its conduct "will" induce, enable, facilitate, or conceal an infringement. Use of the word "will" indicates a degree of likelihood or certainty. *See Spokane Cnty. v. Dep't of Fish & Wildlife*, 430 P.3d 655, 662 (Wash. 2018) (canvassing multiple dictionaries for definitions of the term "will," and explaining that it "can be a statement of future tense, of strong intention or assertion about the future, or a probability or expectation about something,"

---

[7] The statute also defines "copyright management information," and Shiji does not contest that the CMI here falls within the statutory definition.

although it can also mean "inevitability" or "probability" (citations and quotation marks omitted)). The statute does not state that a violation occurs if a defendant knows, or has reason to know, that its actions "may" or "might" enable infringement. As we explain further below, the statute requires more than that.

To assist in interpreting the statute, we may also look to the opinions of our sister Circuits. The Second Circuit has held that, to establish a violation of Section 1202(b)(3), a plaintiff must prove: (1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant "distribute[d] . . . works [or] copies of works"; (3) while "knowing that copyright management information has been removed or altered without authority of the copyright owner or the law"[8]; and (4) while "knowing or . . . having reasonable grounds to know" that such distribution "will induce, enable, facilitate, or conceal an infringement." *Mango*, 970 F.3d at 171. The last two of these elements comprise a "so-called 'double-scienter requirement.'" *Id.* "[T]he defendant . . . must have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law,' as well as actual or constructive knowledge that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Id.* (quoting 17 U.S.C. § 1202(b)(3)); *see also Stevens,* 899 F.3d at 673 (explaining that both

---

[8] Shiji maintains that it did not intentionally or knowingly remove the CMI from the photographs. We need not address this first scienter requirement because we can affirm the district court's grant of summary judgment for failure to demonstrate the second scienter requirement.

Section 1202(b)(1) and (3) "require the defendant to possess the mental state of knowing, or having a reasonable basis to know, that his actions 'will induce, enable, facilitate, or conceal' infringement").

We agree with our sister Circuits' interpretation of the plain language[9] of Section 1202(b)(1) and (3) and with their formulation of the scienter requirement necessary to prove a violation thereof. As the Ninth Circuit explained in *Stevens*:

> To avoid superfluity, the mental state requirement in Section 1202(b) must have a more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements "will" be affected are necessary.
>
> . . .
>
> [W]e hold that a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past "pattern of conduct" or "modus operandi," that the defendant was aware [of] or had reasonable grounds to be aware of the probable future impact of its actions.

*Stevens*, 899 F.3d at 674.

---

[9] The Ninth Circuit in *Stevens* cogently explained why its interpretation of the statute is also supported by the legislative history of Section 1202. *See Stevens*, 899 F.3d at 674–75. We need not repeat that legislative history here. *See Harris*, 216 F.3d at 976 (explaining that "[w]hen the import of words Congress has used is clear . . . we need not resort to legislative history").

Elias LLC urges this Court to adopt a standard by which a defendant that knowingly removes CMI without consent can be held liable so long as the defendant knows, or has reasonable grounds to know, that its actions "make infringement generally possible or easier to accomplish." By contrast, Shiji argues, as the district court held, that the defendant must know, or have reasonable grounds to know, that removing CMI would likely lead to future infringement.

The Ninth Circuit in *Stevens*, facing a similar fact pattern to the one now before us, rejected the statutory interpretation favored by Elias LLC. The plaintiffs there, also photographers whose CMI had allegedly been removed by an intermediary software provider, argued that "because one method of identifying an infringing photograph has been impaired, someone *might* be able to use their photographs undetected." 899 F.3d at 673 (emphasis in original). The court explained that such a general approach to statutory interpretation "won't wash." *Id.* Citing the text of the statute and the legislative history of Section 1202, the Ninth Circuit concluded that plaintiffs must "provide evidence from which one can infer that future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Id.* at 675.

### B.    Whether Shiji knew, or had reasonable grounds to know, that its actions would induce, enable, facilitate, or conceal infringement

Before the district court and on appeal, Elias LLC points to three pieces of evidence that, it claims, create a genuine dispute of material fact as to whether Shiji knew or had reason to know that its actions "will induce, enable, facilitate, or conceal infringement" of copyrighted works. We examine each in turn.

#### 1. The Leonardo arbitration

In urging us to reverse the district court's grant of summary judgment, Elias LLC's principal piece of evidence is a 2016 arbitration proceeding between Shiji and a competitor in the OTA photo distribution business, Leonardo Worldwide Corporation.[10] The dispute began when two of Leonardo's clients were looking to switch photo management services to Shiji (at the time, ICE Portal). In the arbitration, Leonardo accused Shiji of corporate infiltration and theft. It claimed that Shiji improperly accessed Leonardo's image database, downloaded multiple images from the database without Leonardo's consent, processed those images through Shiji's own software (thereby scrubbing the images of CMI inserted by Leonardo), and then re-published the images on Shiji's

---

[10] The record on appeal included an interim dispositive order issued by the arbitration panel and certain deposition excerpts, but no other underlying evidence. Thus, we will present the facts and holdings as set forth in the arbitration order.

own website for financial gain. According to Leonardo, Shiji's actions of removing CMI from the images or distributing the images knowing they were cleansed of CMI violated Section 1202(b) of the DCMA because they "induced, enabled, facilitated, or concealed [Shiji's] infringement of the copyrighted images." Importantly, the DMCA claim rested on Leonardo's insertion of its own CMI into images that were owned by third-party hotels, not Leonardo.

The arbitration panel dismissed the DMCA claim on multiple grounds: (1) "Leonardo has not shown the essential ingredient of a DMCA claim that any allegedly improper actions regarding CMI would result in an infringement of a copyright"; (2) the panel construed Section 1202(b) as requiring that a DMCA claimant be both the owner of the copyright and the party who inserted the wrongly removed CMI, and Leonardo was not both because it was not the copyright owner; (3) Shiji's removal of Leonardo's CMI did not result in an infringement of any hotel copyrights; and (4) Leonardo lacked standing because the DMCA is intended to protect copyright holders that have employed CMI, and Leonardo had no copyright in the stolen images.

According to Elias LLC, Leonardo's claims in the arbitration "put [Shiji] on notice and imbued [Shiji] with the necessary mental state to violate § 1202 in the future where, as here, [Shiji's] metadata stripping system was challenged by [a] copyright owner." In other words, while Leonardo's lack of copyright ownership may have left its DMCA claim dead in the water, it was reasonably

foreseeable to Shiji that another litigant (who *is* a copyright owner) could assert similar claims against Shiji in the future. This is a tempting inference to make, but it is insufficient to raise a genuine issue of material fact as to the second scienter requirement for several reasons.

First, the facts of the Leonardo arbitration are distinguishable. There, Shiji went farther than simply running images through its automated software and making those optimized images available on its server. Rather, it allegedly accessed, knowingly and without permission, a competitor's database of copyrighted images, put those images through the scrubber, and then re-published them for direct financial gain. Therefore, "Leonardo allege[d] that [Shiji's] actions induced, enabled, facilitated, or concealed *[Shiji's own] infringement* of the copyrighted images." (emphasis added). The Leonardo arbitration had nothing to do with whether Shiji's role as an intermediary image optimizer might induce or enable infringement by a third party.

Second, and more importantly, the record before us does not indicate that the Leonardo arbitration adduced any facts that would give Shiji reason to know that its software's effects on CMI would make copyright infringement "likely, albeit not certain" to occur. At most, the 2016 Leonardo arbitration gave Shiji knowledge that its software was scrubbing CMI from some of the extended attributes of the images – and, in fact, different extended attributes than the ones at issue here. But there is no evidence that

Shiji learned, for example, that copyright owners routinely rely on embedded CMI to police infringements of their works on the internet or that would-be infringers prefer to utilize images from OTAs because they have already been cleansed of CMI.

Third, it may have been reasonable for Shiji to presume, in the wake of the Leonardo arbitration, that the next DMCA lawsuit it faced would come from a copyright owner. But it does not follow that Shiji must have *also* known that it was engaging in conduct that violated the law. We do not hold here that prior litigation or arbitration of a DMCA claim can never give a defendant the requisite knowledge under Section 1202(b). We limit our holding to an affirmation of the district court's conclusion that Leonardo's particular accusations in this case did not give Shiji reasonable grounds to know that its software's removal of CMI, and the subsequent distribution of photographs stripped of CMI, would induce, enable, facilitate, or conceal the infringement of Elias LLC's copyrighted works.

For these reasons, the Leonardo arbitration fails to create a genuine issue of material fact as to whether Shiji knew, or had reasonable grounds to know, that its actions of stripping CMI and distributing those stripped images would "induce, enable, facilitate, or conceal an infringement." *See Stevens*, 899 F.3d at 676 ("Because the [plaintiffs] have not put forward *any* evidence that [the defendant] knew its software carried even a substantial risk of inducing, enabling, facilitating, or concealing infringement, let

alone a pattern or probability of such a connection to infringement, [the defendant] is not liable for violating [the DMCA].").

### 2. Mr. Elias's purposeful insertion of CMI into images

Elias LLC claims that, unlike the photographer-plaintiffs in *Stevens*, Mr. Elias did use the CMI contained within the images' extended attributes to police copyright infringement on the internet. This also fails to clear the summary judgment bar.

There is no indication in the record that Shiji knew at the relevant time that copyright owners use CMI in this manner. Elias LLC therefore cannot show that Shiji knew or had reason to know that removal of CMI could conceal an infringement. And Elias LLC cannot explain how it could police copyright infringement if an infringer can just as easily remove CMI metadata from an image as it could download an image from an OTA website. *See Stevens*, 899 F.3d at 676 (explaining that "a party intent on using a copyrighted photograph undetected can itself remove any CMI metadata, precluding detection through a search for the metadata. . . . [Thus,] one cannot plausibly say that removal by a third party 'will' make it easier to use a copyrighted photograph undetected").

Elias LLC argues that the district court read requirements into Section 1202(b) that do not exist – namely, that it prove "keyword searches" are an effective method for finding infringement and/or that Shiji be aware that copyright owners will search for keywords embedded in the metadata to find infringement on the internet. Elias LLC misunderstands the district

court's order. The district court did not impose additional, extra-statutory requirements; rather, it was explaining why Elias LLC's method of proving knowledge was ineffective. Similarly, neither the district court nor the Ninth Circuit imposed an additional requirement that the plaintiff show evidence of a pattern of conduct or *modus operandi*. Consistent with *Stevens,* the district court explained that demonstrating past patterns of conduct or *modus operandi* are *examples* of ways in which plaintiffs can meet their burden of proof. *See Stevens*, 899 F.3d at 675 ("There are no allegations, for example, of a 'pattern of conduct' or 'modus operandi' involving policing infringement by tracking metadata."). Elias LLC could have provided different evidence to show that Shiji possessed the requisite level of knowledge to satisfy the second scienter requirement, but it did not.

### 3. Instances of infringement on the internet

According to Elias LLC, Shiji allegedly has a *modus operandi* of removing a photographer's CMI "knowing that CMI [being removed] has likely directly resulted in infringement of the Elias Images." In support of this argument, Elias LLC pointed to the infringing images that Mr. Elias found on non-party websites that had been stripped of his CMI.

There is a fundamental problem with this argument – there is no evidence linking Shiji's actions of removing the photographs' CMI with the instances of infringement Mr. Elias uncovered on the internet. *See Stevens*, 899 F.3d at 675 (explaining that to prevail, a plaintiff must "provide evidence from which one can infer that

future infringement is likely, albeit not certain, to occur *as a result of* the removal or alteration of CMI" (emphasis added)). Elias LLC argues that the at-issue photographs on the OTA websites have been stripped of CMI, and the infringing images he found on non-party websites have also been stripped of CMI; therefore, the infringing parties must have pulled the images from OTA websites. But this argument rests on speculative and unsupported assumptions. For example, the argument presumes that infringing parties would go to an OTA website (instead of the Hotels' or Elias LLC's own website) to copy the image. It also presumes that an infringing party would download the image, as opposed to taking a screenshot or screengrab[11] of the image. Yet nothing in the record substantiates these inferences. For example, Mr. Elias admitted that he did not know from which website the third-party infringers copied the images. It is also unclear *how* the infringing parties copied the images – anyone with a smart phone could simply take a screenshot of the photograph from a website, which process inherently does not preserve the photograph's embedded CMI. Similarly, Mr. Elias acknowledged that unscrupulous infringers could easily remove CMI themselves.

Here, Elias LLC produced evidence, essentially, that his CMI-cleansed photographs appeared in at least two places on the

---

[11] A screengrab or screenshot is essentially a digital picture of the image on the screen. When an individual takes a screenshot of the picture, the metadata of the underlying picture is not carried through with the screenshot.

internet: OTA websites and certain non-party websites that are unaffiliated with the OTAs. We do not believe that Congress meant to impose liability under the DMCA based on such a tenuous connection. *See Stevens*, 899 F.3d at 673 (rejecting liability when an infringer "might" be able to use copyrighted works undetected because such an assertion "simply identifies a general possibility that exists whenever CMI is removed"). The district court was correct to grant summary judgment in the face of such speculation. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011) ("At the summary judgment stage, such 'evidence,' consisting of one speculative inference heaped upon another, [is] entirely insufficient.").

Elias LLC argues that this reasoning requires a Section 1202(b) plaintiff to show a specific and identifiable infringement. Not so. What the statute requires is a showing that a defendant took certain actions, such as wrongly removing CMI or distributing images wrongly scrubbed of CMI, (1) knowing that the CMI has been wrongly removed or altered, and (2) knowing or having reason to know that such removal or distribution "will induce, enable, facilitate, or conceal an infringement." *See* 17 U.S.C. § 1202(b)(3); *see also Mango*, 970 F.3d at 171 (setting forth the elements of a Section 1202(b)(3) claim).

What's more, we agree with the Ninth Circuit that the statute's use of the future tense does not require a plaintiff to show that any specific infringement has already occurred and does not "require knowledge in the sense of *certainty* as to a future act."

*Stevens*, 899 F.3d at 674 (citation omitted) (emphasis added). Elias LLC is thus incorrect that the district court required it to show that Shiji's CMI removal "be directly linked to a particular infringement." Elias LLC chose to frame its DMCA claim in terms of proving that actual infringement occurred (and therefore that infringement was allegedly induced or enabled). We, and the district court before us, therefore, grapple with the evidence presented by Elias LLC to determine whether Shiji was the inducer or enabler. Elias LLC cannot make that showing because the evidence indicates that the infringing parties could have purloined these images from any number of sources, and Elias LLC has identified no evidence indicating that Shiji's distribution of these photographs ever "induce[d], enable[d], facilitate[d], or conceal[ed] an infringement."

In short, the statute's plain language requires some identifiable connection between the defendant's actions and the infringement or the likelihood of infringement. To hold otherwise would create a standard under which the defendant would always know that its actions would "induce, enable, facilitate, or conceal" infringement because distributing protected images wrongly cleansed of CMI would always make infringement easier in some general sense. *See Stevens*, 899 F.3d at 673, 674 (finding that a mere showing of CMI removal, leading to the possibility that an infringer could use the photos undetected, is insufficient to meet Section 1202(b)'s second scienter requirement because "it simply identifies a general possibility that exists whenever CMI is removed" and

"Section 1202(b) must have a more specific application than the universal possibility of encouraging infringement"). This reading would effectively collapse the first and second scienter requirements. Congress enunciated the double scienter requirement for a reason, and we must interpret the statute to effectuate that intent. *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) ("The rule is that we must presume that Congress said what it meant and meant what it said." (quotation marks omitted)).

## IV

For the reasons stated, we conclude that the district court properly granted summary judgment to Shiji on Elias LLC's claim under the DMCA. Elias LLC did not meet its burden of coming forward with sufficient evidence demonstrating Section 1202(b)'s second scienter requirement, and judgment in Shiji's favor was therefore appropriate. Accordingly, we affirm.

**AFFIRMED.**