[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12844

Non-Argument Calendar

_____

ERIC JONES,

Plaintiff-Appellant,

*versus*

GEORGIA PORTS AUTHORITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:20-cv-00315-RSB-BKE

_____

Before ROSENBAUM, JILL PRYOR, and ABUDU, Circuit Judges.

PER CURIAM:

Eric Jones, represented by counsel, appeals the district court's grant of summary judgment for his employer, Georgia Ports Authority ("GPA"), in an action alleging disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). On appeal, he argues that the district court misapplied the summary judgment standard and incorrectly found that he failed to establish pretext. He also argues that he properly raised before the district court his argument that he presented a convincing mosaic of circumstantial evidence of disability discrimination, and that such argument should be considered on appeal. After review, we affirm.

## I.    FACTUAL   BACKGROUND   &   PROCEDURAL HISTORY

Jones was an Army veteran who had been formally diagnosed with post-traumatic stress disorder ("PTSD") that stemmed from his time in combat.[1] After serving in the military, he began working for the GPA, where he acted as a ship-to-shore crane operator for 24 years until his termination in February 2019. Starting in 2016, Jones worked under Karl Nell, who Jones alleges created a

---

[1] These facts, presented in a light most favorable to Jones, come from the documentary evidence the parties submitted in favor of and in opposition to summary judgment.

"very stressful" environment in the ship-to-shore department. According to Jones, Nell made statements to crane operators threatening their jobs and personal safety should any of the crane operators go to management with complaints. Jones believed working with Nell exacerbated his PTSD symptoms.

This stress caused Jones to request, in August 2018, leave under the Family and Medical Leave Act ("FMLA") between August 10 and November 2, 2018, to undergo intensive therapy for his PTSD. In his request, Jones provided the GPA with a letter signed by his treating physician, Dr. Maritza Laura from the Department of Veterans Affairs ("VA"). The GPA granted Jones's FMLA request. Near the end of his leave, Rosa Simmons with GPA's Human Resources ("HR") department sent Jones a letter informing him that his leave period was set to expire soon, and that she needed an update on his status. In response, Jones sent GPA another signed letter from Dr. Laura requesting an additional 12 weeks of leave. The GPA granted Jones's extension request.

Under GPA policy, for an employee to return from leave lasting longer than three days, the employee must provide GPA a signed doctor's note indicating that it is safe for the employee to return to work. It is unclear whether the policy requires handwritten signatures, or if electronic signatures would suffice, but a signature is required, nonetheless. Before submitting his return-to-work letter, Jones met with Simmons to discuss the matter. During this meeting, Jones requested a transfer to "the less stressful environment of the container field" instead of his current position in the

shop-to-shore area.  In response, Simmons told Jones she would need his return-to-work letter listing the accommodations he required.

On January 23, 2019, Jones provided GPA his return-to-work letter.  The letter explained that Jones "report[ed]" he was able to return to work on January 25, 2019, and noted Jones needed to continue his psychiatric follow-up appointments and to attend individual or group therapy.   Although the letter was on VA letterhead and contained Dr. Laura's contact information, Dr. Laura did not sign the letter—electronically or otherwise.

Additionally, before his return-to-work date, Jones appeared for his scheduled appointment with the GPA doctor, but he was informed that the doctor had an unexpected emergency and he could not see Jones that day.  Jones's appointment was rescheduled for the following week, but that appointment was also cancelled. Jones never saw the GPA doctor before GPA terminated his employment.

GPA concluded that Jones's return-to-work letter did not meet the policy requirements.  Ashley Tipton, GPA's Senior Occupational Health Nurse in Employee Health Services, and Simmons determined that the letter had two deficiencies[2]—it was not signed, and the language used in the letter did not indicate that Dr. Laura was actually releasing Jones back to work.   Dr. Montgomery

---

[2] The parties dispute whether Jones was ever informed that his letter was deficient.  However, this factual dispute is not material to the issue on appeal.

Timms, GPA's on-site physician, also found Jones's return-to-work letter deficient for its failure to make a clear recommendation that Dr. Laura personally believed Jones was ready to return to work. He also noted the lack of a handwritten or electronic signature on the letter. He acknowledged that GPA could have attempted to verify the return-to-work letter, such as by reaching out to Dr. Laura personally, but explained that GPA generally did not make attempts to verify letters that did not initially meet its policy requirements.

Ultimately, on February 13, 2019, GPA terminated Jones's employment, citing his inability to produce an adequate return-to-work letter. That same day, GPA's Executive Director e-mailed Nell to ask what was "wrong" with Jones, and Nell responded that Jones suffered from "[a]n illness that only [Jones knew] about." Nell later testified that he did not know Jones had PTSD, and the language he used in the e-mail was meant to reflect that Jones was dealing with something that Nell knew nothing about. However, Jones believed the e-mail demonstrated Nell's flippant opinion about Jones having PTSD or that Nell believed Jones was faking his illness.

After his termination, in July 2020, Jones filed a charge of discrimination with the Georgia Commission on Equal Opportunity and the Equal Employment Opportunity Commission. In September, Jones received his right to sue letter. Shortly thereafter, one of GPA's attorneys sent Jones a letter explaining that GPA's position was, and had always been, that Jones could continue

working for GPA if he could provide an acceptable return-to-work letter that was both signed by his doctor and indicated that the doctor believed it was safe for him to return.  GPA stated that if Jones wanted his position as a crane operator back, he would have to submit an application within 60 days of receiving the letter, and that the offer was not contingent on Jones waiving or compromising any claims he had or planned to assert against GPA.  Although the letter stated GPA had maintained this position since Jones's termination, Jones disputed that statement, noting he did not learn that GPA would rehire him until after he filed his lawsuit.

In November 2020, Jones sued GPA in Georgia state court, which the GPA then removed to federal court.  In his complaint, Jones alleged that GPA discriminated against him under the ADA and Georgia law when GPA refused his reasonable accommodation request and subsequently terminated his employment.

Following discovery, GPA moved for summary judgment on each of Jones's claims.  GPA contended that it terminated Jones for a legitimate, non-discriminatory reason—Jones's failure to provide an adequate return-to-work letter.

In response to GPA's motion, Jones maintained that he presented triable issues of fact regarding GPA's alleged basis for his termination, specifically that the reason given was pretextual. He asserted that his return-to-work letter established his ability to return to work in both content and form, and that GPA's assertions otherwise were evidence of pretext.  Specifically, he pointed to his return-to-work letter, his rescheduled health appointment with

GPA's physician, and Nell's comment about Jones's illness as sufficient evidence of pretext.  In making this argument, he cited to *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011), arguing that "a plaintiff will always survive summary judgment if he present[ed] circumstantial evidence that create[d] a triable issue concerning the employer's discriminatory intent."  However, he made no arguments asserting that his theory of discrimination could be established under the convincing-mosaic standard, and when outlining the standard he believed the district court should use in analyzing the case, he cited to *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973), and its burden-shifting framework.

The district court granted GPA's motion for summary judgment.  To Jones's disability discrimination claim, the court assumed without making a specific factual finding that Jones established a *prima facie* case.  However, it determined that Jones failed to establish that GPA's reason for terminating him was pretextual.  With only the state law claim remaining, the court remanded the case back to state court for resolution of that issue.   Jones's appeal followed.

## II.    ANALYSIS

We review *de novo* a district court's grant of summary judgment, "viewing all evidence and drawing all reasonable factual inferences in favor of the nonmoving party."  *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019).  Summary judgment is appropriate when no genuine issue of material fact exists.  *Sutton v. Wal-Mart Stores East, LP*, 64 F.4th 1166, 1168 (11th Cir. 2023).  A fact

is "material" if it can potentially affect the outcome of the case, and a dispute is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022).

As noted, we "view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (internal quotation marks omitted) (quoting *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020)). However, we must only view the evidence in a light most favorable to the non-moving party to the extent that the nonmoving party's position is supported by the record. *Id.* Thus, simply because some alleged factual dispute exists between the parties does not mean summary judgment cannot be otherwise granted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In evaluating a motion for summary judgment, the district court cannot "weigh evidence or make credibility determinations." *Lewis*, 934 F.3d at 1179.

Under the ADA, covered employers are prohibited from discriminating against a qualified individual based on his disability. 42 U.S.C. § 12112(a). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that he "(1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of [his] disability." *Lewis*, 934 F.3d at 1179.

ADA discrimination claims based on circumstantial evidence are analyzed under the same burden-shifting framework employed in Title VII employment discrimination cases. *Wascura v.*

*City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001).  Under the burden-shifting framework, once the plaintiff establishes a *prima facie* case of discrimination, the defendant must articulate a legitimate, non-discriminatory reason for the employee's termination. *Id.*  Importantly, this burden is one of production, not persuasion, meaning the defendant does not have to persuade this Court that it was actually motivated by the proffered reason. *Id.*  It is sufficient that "the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* at 1243.  If the defendant meets its burden," the presumption of discrimination is eliminated," and the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. *Id.*

To establish pretext, the plaintiff must come forward with evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the defendant were not the real reasons for the adverse employment decision. *Id.*  When the proffered reason is one that would motivate a reasonable employer, the employee must take that reason and rebut it "head on," and the plaintiff "cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 992 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).  "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." *Id.* at 1024-25.

Notably, this Court is not concerned with whether a plaintiff's termination was "prudent or fair," and we are instead

concerned with "whether unlawful discriminatory animus moti-vate[d] a challenged employment decision." *Wascura*, 257 F.3d at 1247. We have repeatedly held that an employer can fire an em-ployee for a good or bad reason, or for no reason at all, so long as that reason was not rooted in discrimination. *Nix v. WLCY Ra-dio/Rahall Commc'n*, 738 F.2d 1181, 1187 (11th Cir. 1984) *abrogated on other grounds by Lewis*, 934 F.3d at 1217-18. Moreover, an em-ployer's honest belief that an employee violated employer policy, even if such belief was wrong, may constitute a legitimate, non-discriminatory reason for termination. *Connelly v. WellStar Health Sys., Inc.*, 758 F. App'x 825, 829 (11th Cir. 2019) (unpublished) (cit-ing *Smith v. PAPP Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987)).

As an alternative to the burden-shifting framework outlined above, a plaintiff can survive summary judgment if he presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination. *Smith*, 644 F.3d at 1328. To make such a showing, a plaintiff may point to evidence such as "(1) suspicious timing, ambiguous statements, or other infor-mation from which discriminatory intent may be inferred, (2) 'sys-tematically better treatment of similarly situated employees,' and (3) pretext." *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)).

Importantly, however, to preserve an argument for appeal, a party must first present it to the district court in a manner that

allows the court to recognize and rule on it. *Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). Additionally, an issue is abandoned if it is not prominently raised on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). We will not consider abandoned claims or claims not first presented to the district court. *Id.* at 1331.[3] Nevertheless, we have said that "[p]arties can most assuredly waive or forfeit positions and issues on appeal, but not individual arguments." *Bourtzakis v. U.S. Att'y Gen.*, 940 F.3d 616, 620-21 (11th Cir. 2019) (internal quotation marks omitted) (quoting *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1194 (11th Cir. 2018)). So long as an appellant "squarely presented" his issue to the district court, he may "make any argument in support of" the issue on appeal, and "is not limited to the precise arguments [he] made below." *Id.* at 621 (internal quotation marks omitted) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)).

On appeal, Jones argues that GPA's failure to verify his return-to-work letter, Nell's e-mail, the language used in his return-to-work letter, his assertion that he was not informed that his letter was insufficient, and the rescheduling of his appointment with GPA's physician sufficiently established, for purposes of summary judgment, that the reasons given were pretextual. Jones also argues that, by citing to *Smith*, which did analyze an employment

---

[3] The district court granted GPA's motion for summary judgment on Jones's failure-to-accommodate claim. On appeal, Jones does not challenge that ruling. As such, we will not review these issues because Jones abandoned them. *See Access Now, Inc.*, 385 F.3d at 1330.

discrimination claim under the convincing mosaic standard, he properly raised that argument below and the district court erred by not even addressing whether he had satisfied that standard. In response, GPA contends that a mere citation to *Smith* was not enough for Jones to have properly raised that argument and, thus, the district court was correct in not analyzing his discrimination claim through the convincing mosaic lens. Consequently, GPA maintains, Jones has waived that argument on appeal.

First, Jones's challenge against the district court's application of the summary judgment standards is meritless. The district court properly weighed the evidence, did not make credibility determinations, and drew all inferences in Jones's favor, as demonstrated in its order. *See Scott*, 550 U.S. at 380; *Lewis*, 934 F.3d at 1179.

Second, assuming *arguendo* that Jones established a *prima facie* case of ADA discrimination, Jones failed to establish that GPA's proffered reason for his termination was pretextual. GPA's failure to verify Jones's return-to-work letter does not rebut the fact that the letter was unsigned and failed to establish that Dr. Laura herself recommended that Jones return to work. Moreover, Dr. Timms explained that GPA generally did not verify letters that did not initially meet GPA's return-to-work letter policy, where letters were unsigned or included ambiguous statements regarding an employee's ability to return to work safely. There is no evidence to suggest that GPA's decision not to follow up with Dr. Laura to verify the noncompliant letter was done with discriminatory animus. The record evidence shows that noncompliant letters are generally

not verified, and Jones has put forth no evidence to rebut this fact. *Chapman*, 992 F.3d at 1030.  The same is true for GPA's failure to inform Jones that his letter was insufficient.  While a factual dispute remains about whether GPA informed Jones about the letter's deficiencies, viewing the evidence in Jones's favor, such failure does not support a finding that Jones was terminated with discriminatory animus.  In any event, there is no question of fact that Jones's return-to-work letter was not signed, and the district court reasonably found that the letter did not articulate whether Jones could return to work. Therefore, the record supports GPA's conclusion that the letter was deficient.  *Nix*, 738 F.2d at 1187.

Additionally, Nell's e-mail does not rebut GPA's proffered reason for terminating Jones.  Nell's e-mail stated that Jones was ill with something only Jones knew about, which Jones took to mean that Nell had negative feelings about Jones's PTSD diagnosis.  Even assuming that Nell did dislike Jones, there is no evidence showing that Nell even played a role in Jones's termination.

Jones also points to GPA's rescheduling of his return-to-work appointment as evidence of pretext, but that has no connection to his termination.  GPA terminated Jones for failing to provide a signed letter from Dr. Laura showing that she professionally believed and recommended that Jones be allowed to return to work.  Jones failed to follow GPA policy, and he was terminated as a result.  Simply put, Jones did not proffer sufficient evidence to create a genuine issue of material fact regarding whether GPA's

articulated reason was pretextual. *Chapman*, 992 F.3d 1012 at 1024-25.

Finally, to GPA's contention that Jones waived his convincing mosaic argument on appeal by failing to raise it below, we need not decide that issue.  Even if Jones did not waive this argument, he cannot succeed under the convincing mosaic standard.  The evidence Jones points to in support of his pretext argument under *McDonnell Douglas* similarly fails to establish any discriminatory intent on GPA's part with respect to his termination.  *Smith*, 644 F.3d at 1328.  The record shows that GPA required a signed return-to-work letter containing the treating physician's professional opinion as to whether Jones could safely return to work, which he did not provide.  Nell's e-mail and the rescheduling of Jones's appointment also do not establish that GPA decision makers terminated Jones's employment with discriminatory intent.  As such, Jones's convincing mosaic argument fails.

### III.    CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment in favor of GPA.